UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:15-cv-12-RLV
(5:04-cr-43-RJC-DCK-2)

| | |
|---|---|
| CLAYTON DOYLE BULLIN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, (Doc. No. 1), and on Petitioner's Pro Se Motion for Evidentiary Hearing, (Doc. No. 11).

**I. BACKGROUND**

In 2006, Petitioner pleaded guilty to conspiracy to possess with intent to distribute at least fifty grams of crack cocaine and at least five kilograms of powder cocaine. (Criminal Case No. 5:04-cr-43-RJC-DCK-2, Doc. No. 87: Judgment). Although Petitioner faced a mandatory life sentence, the Court granted the Government's motion for a downward departure based on Petitioner's substantial assistance. The Court subsequently sentenced Petitioner to sixty months of imprisonment, to be served concurrently with a state sentence, and to five years of supervised release. (Id., Doc. No. 87: Judgment). Petitioner began serving his term of supervised release in 2010. (Id., Doc. No. 168: Petition for Warrant).

On December 19, 2012, Petitioner's probation officer, Chelsey Padilla, recommended

1

that Petitioner's supervised release be revoked, alleging that he had committed two new offenses: (1) possession of methamphetamine, cocaine, and marijuana; and (2) manufacturing methamphetamine. (Id.). The petition stemmed from an unannounced home contact with Petitioner that was made by Padilla and Probation Officer Timothy Goodman on December 17, 2012. (Id., Doc. No. 199 at 8-9: Revoc. Tr.). According to Goodman's testimony at the revocation hearing, while in the home, the probation officers observed drug paraphernalia in plain view. (Id. at 11). A search of the residence revealed possible precursors for a methamphetamine lab. At that time, Petitioner waived his Miranda rights and admitted that he had been using methamphetamine since February 2012. (Id. at 15). Petitioner explained to Goodman in detail how he cooked the methamphetamine using the "shake-and-bake method." (Id. at 15-16). He also told Goodman that he cooked the methamphetamine away from his house in the woods and then disposed of the chemical waste in a dumpster at Lenoir-Rhyne University, where he worked as a cook. (Id. at 16). In addition to his admissions related to the manufacturing of methamphetamine, Petitioner also stated that there was marijuana and cocaine in his house. (Id.). Goodman memorialized Petitioner's confession in a written statement. (Id. at 17). Although Petitioner acknowledged that the information contained in the statement was accurate, he refused to sign it. (Id.). Sergeant Kelly Ward with the Alexander County Sheriff's Office testified that he participated in the investigation at Petitioner's residence after he was called to the scene and that he had previously received a tip that Petitioner was involved in the manufacture of methamphetamine. (Id. at 22-23). As a result of this tip, Petitioner had been placed on a watch list to track pseudoephedrine purchases, and he was found to purchase 2.88 grams of pseudoephedrine two to three times a month. (Id. at 25-26).

During the search of Petitioner's residence, officers found two bottles of degreaser with sodium hydroxide ether, drain cleaner, carburetor cleaner, coffee filters, heat wraps, and plastic tubing underneath the house and in a toolbox on the back porch. (Id. at 27). Sergeant Ward identified the materials as "precursors for [the] manufacture of methamphetamine." (Id. at 28-29). In addition, officers found various pipes, pill bottles, and hypodermic needles inside the house. (Id. at 30). In addition to the testimony from Officer Goodman and Sergeant Ward, the Government also introduced Petitioner's Miranda waiver form, id. at 14; the unsigned confession, id. at 18; photographs taken during the search, id. at 29; the log of pseudoephedrine purchases, which Sergeant Ward authenticated as a regularly kept business record, id. at 24-25; and a lab report analyzing the substances seized, admitted by stipulation of the parties, id. at 32-33.

At the revocation hearing, Petitioner admitted that he had possessed drugs, but denied manufacturing methamphetamine. (Id. at 4-5). He stated that he did not recall telling anything to the probation officers and that he had been using drugs the day of the search and "I was really messed up. I was really high. . . . I was pretty much out of my mind." (Id. at 39). Petitioner testified that most of the items officers identified as precursors for manufacturing methamphetamine belonged to him, and that he regularly purchased pseudoephedrine as reflected in the tracking logs. (Id. at 38-48). Petitioner denied, however, that he ever manufactured methamphetamine and claimed that he purchased the pseudoephedrine for a sinus problem he had. (Id. at 39-47). Petitioner's son also testified, claiming that he and his father used the carburetor cleaner to clean an old truck. (Id. at 50-51). Before resting, defense counsel explained that Petitioner wanted him to call Probation Officer Padilla as a witness but that, in

3

counsel's judgment, he did not see a reason to call her, stating as follows:

> Your Honor, I would like to put on the record [Petitioner] has requested that I call Ms. Padilla as a witness. And I have declined, I told him that I see no reason whatsoever to call her as a witness. But he wanted me to put on the record that he did wish her to be called and he be given an opportunity to question her. And I told him no, not going to do that.

(Id. at 51-52).

This Court revoked Petitioner's supervised release, finding that he had violated the terms of his supervised release by manufacturing methamphetamine. (Id. at 56-57). The Court found that Goodman's testimony was corroborated by the physical evidence and outweighed Petitioner's "self-serving testimony." (Id. at 56). Petitioner argued that the criminal history points in his original PSR were incorrectly calculated because he was incorrectly assessed four criminal history points for offenses that should not have been counted separately because they had been consolidated. (Id. at 57-59 (citing United States v. Davis, 720 F.3d 215 (4th Cir. 2013)). Thus, he argued that he only had nine criminal history points, which would place him in criminal history category IV and would give him a sentencing range of 37-46 months for a Grade A violation of supervised release. (Id. at 59-60). This Court overruled Petitioner's argument regarding his criminal history category, holding that it was appropriate to use the original criminal history calculation and that Davis had not been applied to criminal history category determinations. (Id. at 68). The Court then sentenced Petitioner to 60 months in prison. (Id. at 66-67).

Petitioner challenged the revocation of supervised release on direct appeal,[1] arguing that

---

[1] While Petitioner's appeal was pending, he filed a § 2255 motion that was dismissed without

4

his counsel's failure to call Padilla as a witness violated his rights to confrontation, due process, and under Federal Rule of Criminal Procedure 32.1. United States v. Bullin, 582 F. App'x 176 (4th Cir. 2014). He also argued that his sentence was unreasonable because this Court did not fully consider his arguments that his original sentence would have been lower had the Fair Sentencing Act been enacted before his sentencing and had his consolidated state convictions been counted as a single offense. Id. The Fourth Circuit affirmed the revocation of supervised release, holding that Petitioner had not shown a violation of his rights under the Confrontation Clause, nor had he conclusively shown ineffective assistance because counsel's decision not to call the witness was strategic. Id. The Fourth Circuit also rejected Petitioner's assertion that his sentence was unreasonable. Id. Petitioner's petition for a writ of certiorari was denied by the Supreme Court on January 12, 2015. Bullin v. United States, 135 S. Ct. 1006 (2015). He filed the present motion to vacate on January 26, 2015. Petitioner contends in the motion to vacate that he was denied his right of confrontation, that his criminal history points were incorrectly calculated, and that he received ineffective assistance of counsel in conjunction with the revocation of his supervised release, as well as on appeal from the revocation of his supervised release.

**II. STANDARD OF REVIEW**

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior

---

prejudice because the judgment was not yet final. (Criminal Case No. 5:04-cr-43-RJC-DCK-2, Doc. No. 205: Order).

proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter and the Government's Response, the Court finds that the argument presented by the Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III. DISCUSSION

**A. Petitioner's Claim that Counsel's Refusal to Call Probation Officer Padilla as a Witness at Petitioner's Revocation Hearing Violated Petitioner's Right to Confrontation, as Well as His Rights under Federal Rule of Criminal Procedure 32.1, Resulting in Denial of Due Process.**

Petitioner first contends in the motion to vacate that his counsel's refusal to call Padilla as a witness at Petitioner's revocation hearing violated his right to confrontation, as well as his rights under Federal Rule of Criminal Procedure 32.1, resulting in the denial of due process. He also contends that his sentence was unreasonable because this Court did not fully consider his arguments that his original sentence would have been lower had the Fair Sentencing Act been enacted before his sentencing and had his consolidated state convictions been counted as a single offense. Petitioner raised both of these claims on direct appeal from the revocation of his supervised release, and the Fourth Circuit rejected both claims. Because these claims have previously been considered and rejected, Petitioner is barred from raising them in this action. See United States v. Dyess, 730 F.3d 354, 360-61 (4th Cir. 2013) (holding that § 2255 petitioners are barred from raising issues already decided on direct appeal), cert. denied, 135 S. Ct. 47 (2014); Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) (holding a petitioner

may not re-litigate claims decided on direct appeal "under the guise of [a] collateral attack").

**B. Petitioner's Claim that His Criminal History Points Were Incorrectly Calculated Because He Received Criminal History Points for Offenses That Were Committed More Than Ten Years before the Instant Offense.**

Although the Fourth Circuit addressed on direct appeal Petitioner's contention that his criminal history calculation was incorrect under the Fair Sentencing Act, as well as based on some of his convictions being consolidated, Petitioner raises for the first time here the argument that his criminal history points were incorrectly calculated because he received criminal history points for offenses that were committed more than ten years before the instant offense. (Doc. No. 1-1 at 19). Petitioner bases this claim on the offenses not being within ten years of the conduct leading to the revocation of supervised release, despite the fact that the offenses were within ten years of the commission of the underlying offense. Even if Petitioner could show the cause and prejudice necessary to overcome the procedural bar for his failure to raise this issue on direct appeal, see United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999), barring a miscarriage of justice, error in the application of the Sentencing Guidelines cannot be raised in a § 2255 proceeding, United States v. Foote, ___ F.3d ___, 2015 WL 1883538, at *4 (4th Cir. 2015). Here, there was no error, as the Sentencing Guidelines state that the district court is to apply the original criminal history calculation when determining the sentencing range for a revocation. See U.S.S.G. § 7B1.4, p.s. (comment. n.1) ("The criminal history category is not to be recalculated because the ranges set forth in the Revocation Table have been designed to take into account that the defendant violated supervision."). Thus, this Court did not err in denying Petitioner's request to recalculate Petitioner's criminal history at the time he violated the terms of

his supervised release. See United States v. Crudup, 461 F.3d 433, 440 n.10 (4th Cir. 2006).

### C. Petitioner's Claims of Ineffective Assistance of Counsel During the Revocation Proceedings and on Appeal from the Proceedings.

Petitioner next claims that he received ineffective assistance of counsel during the revocation proceedings and on appeal from those proceedings. The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

The Supreme Court has recognized that revocation proceedings are not part of a criminal prosecution and, therefore, do not afford a defendant "the full panoply of rights." Morrisey v. Brewster, 408 U.S. 471, 480 (1972) (addressing parole violations). This stems from the fact that

"[r]evocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observation of special parole restrictions." Id. The Fourth Circuit has held "that the conditional liberty to which those under supervised release are subject entails the surrender of certain constitutional rights, including any right to have the alleged supervised release violation proved to a jury beyond a reasonable doubt." United States v. Ward, 770 F.3d 1090, 1099 (4th Cir. 2014). In so holding, the Fourth Circuit noted that courts have held that the Sixth Amendment's right to confrontation and to a speedy trial do not apply in supervised release revocation hearings. Id. at 1098.

Other courts have recognized that "there is no constitutional right to counsel in a probation violation hearing." United States v. Allgood, 48 F. Supp. 2d 554, 559-60 (E.D. Va. 1999) (denying § 2255 claim based on alleged ineffective assistance of counsel during supervised release revocation proceedings because it was not constitutionally based); Wright v. United States, No. 7:12-cv-105-F, 2014 WL 4105696, at *2 (E.D.N.C. Aug. 19, 2014) (same). Rather, the right to counsel during revocation proceedings is statutory in nature. See 18 U.S.C. § 3006A(a)(1)(C) & (E); United States v. Soto-Olivas, 44 F.3d 788, 792 (9th Cir. 1995) (stating "in proceedings to revoke supervised release . . . there is no constitutionally guaranteed right to the assistance of counsel"). The Supreme Court has determined that participation by counsel would be "both undesirable and constitutionally unnecessary in most revocation hearings." Gagnon v. Scarpelli, 411 U.S. 778, 787-91 (1973) (recognizing that only under limited circumstances, such as where there is complex documentary evidence, does due process require the appointment of counsel during such proceedings).

Here, Petitioner admitted to having violated the terms of his supervised release by possessing

methamphetamine and marijuana. (Criminal Case No. 5:04-cr-43-RJC-DCK-2, Doc. No. 199 at 4-5). The only question to be decided during the revocation hearing was whether he also had violated the terms of his supervised release by manufacturing methamphetamine, a factually based question. Under these circumstances, Petitioner's Sixth Amendment claims of ineffective assistance of counsel fail because he has not shown that he had a constitutional right to counsel during his revocation proceedings or on appeal from those proceedings. Without a constitutional right to counsel, he cannot show that he was unconstitutionally deprived of the right to effective assistance of counsel.

The Court further finds that, even if Petitioner could establish that he had a constitutionally based right to counsel during his revocation proceedings, he has not made the required showing of deficient performance and prejudice. Petitioner contends that his attorney provided ineffective assistance during the revocation proceedings by: (1) allowing inadmissible hearsay to be admitted; (2) refusing to call Padilla as a witness; (3) allowing Petitioner to be convicted for manufacture even though the evidence was insufficient to support this finding; (4) relying on Davis, rather than United States v. Simmons, 649 F.3d 237 (4th Cir. 2011) (en banc), in arguing that the calculation of his criminal history points was erroneous; and (5) allowing the combination of these errors to violate his Sixth Amendment right to counsel. (Doc. No. 1 at 4). As to Petitioner's first claim—that counsel allowed inadmissible hearsay to be admitted— Petitioner does not identify what he claims is inadmissible hearsay. He seems to base this argument on his contention that testimony from Padilla was used against him. See (Doc. No. 1-1 at 14-15). However, as Petitioner concedes in his confrontation claim, Padilla did not testify at the revocation hearing, nor were statements from Padilla admitted or used against Petitioner

10

during that hearing. Accordingly, Petitioner's contention that his attorney allowed inadmissible hearsay to be admitted during his revocation proceedings is dismissed for lack of specificity and lack of a factual basis. See Dyess, 730 F.3d at 359-60.

Second, Petitioner's contention that trial counsel was ineffective for failing to call Padilla as a witness lacks merit. As the Court has already discussed, Petitioner's assertion that this deprived him of the right of confrontation has already been rejected on direct appeal. Moreover, the Confrontation Clause does not apply in revocation proceedings. See United States v. Vance, 294 F. App'x 3, 3-4 (4th Cir. 2008). Additionally, the Confrontation Clause "applies to 'witnesses' against the accused"—i.e., those who provide testimony against him. Crawford v. Washington, 541 U.S. 36, 51 (2004). It protects against the admission of testimonial statements at trial where the witness is not present, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. Id. at 59. The Confrontation Clause does not guarantee the right to call every potential witness against an accused. Here, this Court's decision to revoke Petitioner's supervised release was made based on the evidence presented during the revocation hearing. It was not based on the petition for warrant that was written by Padilla. Because Padilla was not an adverse witness against Petitioner, he had no right to confront her. Likewise, Petitioner's assertion that the failure to call Padilla as a witness violated his rights under Rule 32.1 fails because that section also addresses questioning "any adverse witness," which Padilla was not.

Finally, even if Petitioner could show that he had a right to call Padilla as a witness, he has not established deficient performance or prejudice from counsel's decision not to call her. The decision by counsel not call Padilla was a strategic determination and is, therefore, entitled to

great deference. See Powell v. Kelly, 562 F.3d 656, 670 (4th Cir. 2009); United States v. Terry, 366 F.3d 312, 317 (4th Cir. 2004) (holding strategic decisions, such as which witnesses to call, are entitled to "enormous deference"). In any event, Petitioner cannot show that even if he had been allowed to call Padilla as a witness, her testimony would have had any adverse impact on the credibility of the testimony given by Goodman and Ward, testimony that the district court accepted as credible and sufficient to establish the violation of supervised release. Indeed, Padilla's testimony would likely have served only to further corroborate the testimony given by Goodman and Ward. Thus, Petitioner has not shown that the result of the proceeding would likely have been different had Padilla testified. See Strickland, 466 U.S. at 694.

Petitioner next argues that his counsel was ineffective for failing to challenge the Court's finding that he manufactured methamphetamine. However, defense counsel specifically argued at the revocation hearing that the Government had not presented sufficient evidence to establish that Petitioner had manufactured methamphetamine. (Criminal Case No. 5:04-cr-43-RJC-DCK-2, Doc. No. 199 at 54-56). Petitioner also argues that his attorney was ineffective because he did not challenge Petitioner's criminal history calculation based on the Fourth Circuit's decision in Simmons. This claim fails because Simmons has no bearing on the calculation of Petitioner's criminal history under the guidelines. Rather, in Simmons, the Fourth Circuit addressed a statutory claim regarding when a prior conviction is considered a felony punishable by more than one year of imprisonment under the Controlled Substances Act. Petitioner's criminal history points were calculated under the Sentencing Guidelines and were based on the sentences actually imposed, not sentences that could have been imposed. Because Simmons was inapplicable, counsel was not deficient for failing to rely on it, and Petitioner cannot show prejudice because

an argument based on Simmons would not have affected the sentence he received. Finally, because Petitioner has not shown any deficient performance or prejudice resulting from the alleged errors of counsel, his assertion of cumulative error also fails. See Fisher v. Angelone, 163 F.3d 835, 852 (4th Cir. 1998). Accordingly, Petitioner's claims that his attorney provided ineffective assistance during the revocation proceedings are denied.

Petitioner next contends that his appellate counsel provided ineffective assistance by: (1) failing to challenge the calculation of his criminal history points; (2) not arguing that his "conviction" for manufacture violated the Constitution because the evidence was insufficient; (3) failing to challenge the admission of hearsay at the revocation proceedings; and (4) having a conflict of interest based on counsel's failure to raise all of the issues Petitioner sought to assert on appeal.[2] (Doc. No. 1-1 at 26-32). Petitioner's claims that he received ineffective assistance of counsel on appeal largely track his claims that he received ineffective assistance of counsel during the revocation proceedings, and these claims fail for the same reasons. First, contrary to Petitioner's assertion that his appellate counsel failed to challenge the calculation of his criminal history points, the Fourth Circuit's decision shows that counsel argued that Petitioner's consolidated North Carolina convictions should have been counted as a single offense, rather than as multiple offenses. Bullin, 582 F. App'x at 176. Because this argument was raised, Petitioner cannot show deficient performance, and because it was rejected when the Fourth

---

[2] Although Petitioner's appellate counsel filed a motion to withdraw based on his having told her that she was "fired," the "firing" and request to withdraw occurred only after Petitioner lost his appeal. See (Doc. No. 1-1 at 28-29).

13

Circuit upheld the reasonableness of his sentence, he cannot show prejudice. Furthermore, Petitioner has not shown any valid basis on which counsel could have argued that his criminal history points were incorrectly calculated.

Likewise, Petitioner has not shown that counsel's decision not to challenge the sufficiency of the evidence supporting the revocation of his supervised release was objectively unreasonable, nor has he shown prejudice from this decision where the objective physical evidence, including chemicals and containers that were precursors for the manufacture of methamphetamine, supported the finding that Petitioner was manufacturing methamphetamine. See (Criminal Case No. 5:04-cr-43-RJC-DCK-2, Doc. No. 199 at 27-30). Petitioner also fails to specifically identify the inadmissible hearsay that he contends should have been challenged on appeal, and he fails to show how the result of his appeal would likely have been different had his counsel raised the admission of hearsay on appeal.

Finally, Petitioner's assertion that his appellate counsel provided ineffective assistance because she did not raise all of the issues that he sought to have determined on appeal also fails. Appellate counsel is not required to present every claim, or even every non-frivolous claim, that her client wishes to assert. Rather, appellate counsel has a duty to "examine the record with a view to selecting the most promising issues for review." Jones v. Barnes, 463 U.S. 745, 752 (1983). The Fourth Circuit has explained that courts should ordinarily only "find ineffective assistance for failure to pursue claims on appeal" when "'ignored issues are clearly stronger than those presented.'" United States v. Mason, 774 F.3d 824, 829 (4th Cir. 2014) (quoting Smith v. Robbins, 528 U.S. 259, 288 (2000)). Petitioner has not shown that any of the issues that he requested counsel to bring were clearly stronger than those that counsel presented. In sum,

because Petitioner has shown neither deficient performance, nor prejudice, with respect to his representation on appeal, his claims of ineffective assistance of appellate counsel are denied.

## IV. CONCLUSION

For the reasons stated herein, the Court will dismiss the § 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's § 2255 motion to vacate, (Doc. No. 1), is **DENIED** and **DISMISSED**.

2. Petitioner's Motion for Evidentiary Hearing, (Doc. No. 11), is **DENIED**.

2. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller–El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong).

Signed: May 27, 2015

Richard L. Voorhees
United States District Judge